UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JOSEPH DAMBROWSKI,     :

       Plaintiff,  :

   - against -    :

MICHAEL J. ASTRUE,     :
Commissioner of Social Security,

            :

       Defendant.
--------------------------------------------------------x

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
RICHARD J. HOLWELL**

07 Civ. 3775 (RJH)(FM)

**FRANK MAAS**, United States Magistrate Judge.

    Plaintiff Joseph Dambrowski ("Dambrowski") brings this action pursuant to

Section 205(g) of the Social Security Act, as amended ("Act"), 42 U.S.C. §§ 405(g),

1383(c)(3), to seek review of a final decision of the Commissioner ("Commissioner") of

the Social Security Administration ("SSA") denying his application for Supplemental

Security Income ("SSI") benefits.  Dambrowski has moved for judgment on the pleadings,

pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)").  The

Commissioner, in turn, has cross-moved to remand Dambrowski's case for further

administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  For the

reasons set forth below, I recommend that the Commissioner's motion be granted, and that

Dambrowski's motion be denied.

I.    Background

A.    Procedural History

On April 5, 2004, Dambrowski filed a pro se application for SSI benefits,

which was given a protective filing date of August 20, 2003, based on the date of his prior

benefits inquiry.  (R. 12, 35-37, 56).[1]  After Dambrowski's application was denied on

December 4, 2003, he requested a hearing before an Administrative Law Judge ("ALJ"),

which took place on August 31, 2005, before ALJ Jay Cohen.  (Id. at 12, 18-22, 346).  On

June 28, 2006, ALJ Cohen denied Dambrowski's application for SSI benefits.  (Id. at 16).

Dambrowski then sought review of the ALJ's decision.  The Appeals Council denied that

request on March 14, 2007.  (Id. at 5-7).

Dambrowski commenced this action on May 14, 2007.  (See Docket No. 2

(Compl.)).  He has been represented by counsel in connection with his request for review

by the Appeals Council and in this suit.  (Id.; R. 5-7).

On June 13, 2007, Your Honor referred the case to me for a Report and

Recommendation.  (Docket No. 4).  Dambrowski then moved for judgment on the

pleadings pursuant to Rule 12(c), or, alternatively, to remand the case for further

administrative proceedings.  (Docket No. 8).  Thereafter, on January 25, 2008, the

Commissioner cross-moved to remand the case for further administrative proceedings

pursuant to the fourth sentence of 42 U.S.C. § 405(g).  (Docket Nos. 12-13).  Dambrowski

---

[1]    "R." refers to the certified copy of the administrative record filed by the
Commissioner as part of the Answer.  (Docket No. 7).

responded on February 5, 2008, arguing that the record establishes that he is disabled and that his case should consequently be remanded for the calculation of benefits only. (Docket No. 15).

      B.     <u>Relevant Facts</u>

      1.     <u>Non-Medical Evidence</u>

Dambrowski is a thirty-one-year-old man who suffers from chronic gastro-intestinal problems.  Although Dambrowski was born in the United States, when he was eleven years old he moved to Germany, where he attended school until the eighth grade. (R. 145, 350).  He returned to the United States around the age of twenty-five.  (<u>Id.</u> at 350).  He has few friends and lives alone in the Bronx.  (<u>Id.</u> at 244, 349, 356-57).

At the hearing, Dambrowski testified that his longest period of employment in the United States was three weeks at a department store.  (<u>Id.</u> at 351).  Shortly before the hearing, he also worked as a waiter for two weeks, but he could not continue because he needed frequent bathroom breaks.  (<u>Id.</u> at 350).  According to Dambrowski, his constant need to use the bathroom and persistent rectal bleeding prevent him from being employed. (<u>See</u> <u>id.</u> at 351, 354).

By the time of the hearing, Dambrowski had been seeing a Dr. Patel at Bronx-Lebanon Hospital for depression for nine months.  (<u>Id.</u> at 354).  He testified that he also used marijuana because he was depressed.  (<u>Id.</u> at 357; <u>see also</u> <u>id.</u> at 215, 269, 297

(medical records)). He further explained that his daily life consists of light household chores; he also enjoys music and singing. (Id. at 355-56).

On April 4, 2006, Raymond Cestar ("Cestar"), a vocational expert, answered post-hearing interrogatories posed by the ALJ. (Id. at 323-25). Cestar found that Dambrowski's only past relevant work consisted of short-term jobs, in such fields as kitchen helper and newspaper seller. (Id. at 323). He further concluded that someone in Dambrowski's situation could be employed in sedentary jobs, including work as a ticket counter or surveillance system monitor. (Id.). However, in his answer to an interrogatory asking whether a person who was required to miss work an average of three days per month could perform these jobs, Cestar responded, "No!" (Id.). Additionally, in response to an interrogatory asking whether a person who had to take breaks averaging one hour per day could "sustain [those] jobs," Cestar observed that such a hypothetical person would be "unlikely to meet quality standards or productivity norms on a sustained basis. These are essential for competitive employment." (Id. at 324).

### 2.    Medical Evidence

Dambrowski's medical records indicate that he suffers from ulcerative colitis.[2] (Id. at 72, 76, 113, 121, 127, 140, 142, 146, 181, 213, 232, 234, 236, 295, 298, 332-36). His condition is marked by the need for frequent bathroom visits, during which he often passes bloody stool. (See, e.g., id. at 77, 79, 140, 201, 351). In 1998,

---

[2]    "Ulcerative colitis" is "chronic, recurrent ulceration in the colon." Dorland's Illustrated Medical Dictionary 357 (27th ed. 1988).

Dambrowski had most (but not all) of his large intestine removed during surgery in Germany.  (Id. at 79).  His treating physician, Anthony Kopatsis ("Dr. Kopatsis") confirmed that he would also require additional major surgery in the future.  (Id. at 72, 179).

Dambrowski was treated for ulcerative colitis at Coney Island Hospital by a Dr. Marina Margulis in August 2003.  (Id. at 73-101).  The records of his three-day hospital stay show that he was anemic and had been experiencing persistent bloody diarrhea.  (Id. at 76-83).  On August 13, 2003, Dr. Margulis performed a rectal biopsy, which revealed that Dambrowski had pseudopolyps[3] in his rectum and colon.  (Id. at 86-87, 95-96).  He was diagnosed as having ulcerative proctitis,[4] irritable bowel syndrome, and anemia.  (Id. at 76).  On August 14, 2003, the date of his discharge, he was prescribed Prevacid for his ulcer, ferrous sulfate for his anemia, and Rowasa, an enema, to treat swelling, edema, and inflammation of his colon.  (Id. at 100).  During a follow-up visit on August 22, 2003, Dambrowski reported some improvement, noting that he had more solid and less frequent bowel movements.  (Id. at 90).

On October 5, 2003, Dambrowski was admitted to Staten Island University Hospital after complaining of bloody diarrhea lasting several days.  (Id. at 113, 121).  He was treated with intravenous fluids and given a low-fat diet.  While there, Dambrowski

---

[3]    A "pseudopolyp" is a growth caused by ulceration.  Dorland's, supra note 2, at 1333, 1381.

[4]    "Proctitis" is an "inflammation of the rectum."  Dorland's, supra note 2, at 1359.

5

also underwent a sigmoidoscopy[5] which revealed the presence of colon and rectal polyps. (Id. at 122-25).  He was released on October 9, 2003, with a prescription for prednisone and a recommendation that he have a colostomy and the removal of his rectal stump[6] to reduce the risk of cancer.  (Id. at 115, 132, 134, 139).  Dambrowski refused the surgery, saying he wanted a second opinion.  (Id. at 139).

On November 5, 2003, Dambrowski was admitted to Staten Island University Hospital overnight for an anoscopy[7] and rectal biopsy by Dr. Kopatsis.  (Id. at 102-08).  The procedures revealed a rectal polyp.  (Id. at 108).  He was released the next day with prescriptions for Prevacid, ferrous sulfate, Rowasa, and prednisone.  (Id. at 174).

On November 14, 2003, Dambrowski underwent two consultative medical evaluations.  (Id. at 145-50).  Dr. Flavia Robotti conducted a psychiatric exam, finding Dambrowski to be "mildly depressed" and "somewhat anxious."  (Id. at 145).  She concluded that he suffered from an adjustment disorder with depressed mood, and that his prognosis was "fair."  (Id. at 146).  The doctor also recommended that Dambrowski be referred for outpatient psychiatric treatment.  (Id.).

---

[5]      A "sigmoidoscopy" is a procedure in which an instrument is used to inspect the colon.  Dorland's, supra note 2, at 1520.

[6]      A "rectal stump" is the distal end of the rectum remaining after a partial colostomy.  See Dorland's, supra note 2, at 1435, 1596.

[7]      An "anoscopy" is an "examination of the anus and lower rectum" using a speculum.  Dorland's, supra note 2, at 94.

Dr. Amina Khattak conducted a physical examination of Dambrowski.  (Id. at 147-50).  She agreed that he suffered from ulcerative colitis and constant bloody diarrhea, but the rest of her examination was unremarkable.  (Id.).  In particular, the doctor noted that, during his examination, Dambrowski admitted that he could "walk ten blocks, lift and carry 20 [pounds]," "shop for one hour," "travel for two to three hours," and climb two flights of stairs.  (Id. at 148).

On November 15, 2003, a doctor completed an SSA physical residual functional capacity ("RFC") assessment form regarding Dambrowski.  (Id. at 151-56). The RFC doctor concluded on the basis of a file review that Dambrowski could sit or stand for six hours, and occasionally carry twenty pounds or balance, climb, stoop, kneel, crawl and crouch.  (Id. at 152-53).  The doctor further opined that Dambrowski had no manipulative, visual, or communicative limitations, or environmental aversions.  (Id. at 153-54).  The doctor did not disagree, however, with the conclusions reached by Dambrowski's treating physicians regarding Dambrowski's physical limitations.  (Id. at 155).

On December 1, 2003, another doctor completed an SSA mental RFC assessment regarding Dambrowski.  (Id. at 157-59).  The doctor agreed that Dambrowski had an adjustment disorder, but found that he was not significantly limited in any area covered by the assessment.  (Id. at 159; see also id. at 160-73 (concluding that Dambrowski had only "mild" limitations in social functioning)).

7

Medical records dated February 4 and March 3, 2004, show that Dambrowski visited Beth Israel Medical Center and was discharged with prescriptions for various medications.  (Id. at 185-86, 301-02).  The record does not contain any further information, however, concerning these hospitalizations.

On March 17, 2004, Dr. Oksana Aron of HS Systems, Inc., examined Dambrowski consultatively to determine if he had a medical condition that prevented him from complying with the requirements of New York City's public assistance work programs.  (Id. at 297-99).  Previously, on October 31, 2003, HS Systems had referred Dambrowski to a rehabilitation program.  (Id.).  On this occasion, the doctor found that Dambrowski was "moderately impaired in activities requiring lifting, carrying and traveling secondary to his ulcerative colitis."  (Id. at 298).  Dambrowski again was referred to the rehabilitation program for an additional two months of services.  (Id. at 292-300).

On January 6, 2005, Dambrowski saw Dr. Gerard Sykes at Bronx-Lebanon Hospital.  (Id. at 199).  He complained of having had three days of bloody diarrhea and requested refills of his medications.  The hospital records indicate that he was in a "hurry to catch the bus."  (Id. at 200).  On January 15, 2005, Dambrowski visited the emergency department at Bronx-Lebanon Hospital complaining of an inability to sleep and that he "generally fe[lt] bad."  (Id. at 212-13, 218).  He was diagnosed as having depression and a substance-induced mood disorder.  (Id. at 206).  A doctor prescribed Ambien, Lexapro,

and Abilify, and recommended that Dambrowski follow up at the Fulton Psychiatry Clinic.
(Id.).

Dambrowski again visited Bronx-Lebanon Hospital on June 11, 2005,
complaining of bleeding due to his ulcerative colitis.  (Id. at 234-39).  Dambrowski was
prescribed Asacol, Canasa, Seroquel, and Lexapro and left the hospital against medical
advice.  (Id. at 236, 261, 279).

On September 26, 2005, Dambrowski went to Bronx-Lebanon Hospital
reporting that he had been experiencing diarrhea ten to twelve times a day for three weeks.
He requested a refill of his medications, which he had not been taking for three weeks.
(Id. at 201-02).

A medical report prepared by "F.E.G.S." in June 2006 confirmed
Dambrowski's conditions of ulcerative colitis and mild to moderate depression.  (Id. at
332-35).  Appended to the report is a handwritten note, dated April 18, 2006, by Dr.
Santokh Singh, who treated Dambrowski's depression at Bronx-Lebanon Hospital.  (Id. at
336).  Dr. Singh stated that "to the best of [his] knowledge, [Dambrowski was] unable to
work for at least 12 months" because of his ulcerative colitis.  (Id.).  He also noted that it
was "very hard for [Dambrowski] to stay in reasonable mental health" because he had no
medical insurance and no job.  (Id.).  The following month, the New York City Human
Resources Administration concluded, on the basis of medical information provided to it,

9

that Dambrowski was "temporarily unable to work" and referred him for vocational rehabilitation.  (Id. at 337-38).

During his frequent hospital visits, Dambrowski's blood was drawn to determine, among other things, his hematocrit levels.[8]  In August and October 2003, Dambrowski's hematocrit level was 30 percent or less.  (Id. at 98, 144).  In September and October 2003, his hematocrit levels were slightly above 30 percent, ranging from 30.3 percent to 34 percent.  (Id. at 92, 109, 114, 144).  Between March 2004 and June 2005, his hematocrit levels ranged from 36 to 42 percent.  (Id. at 197, 252-53, 300).  Because the ALJ did not obtain records for Dambrowski's hospitalizations at Beth Israel Medical Center in February and March 2004, his hematocrit levels at those times, and any other information the records may contain, is not presently known.

3.    ALJ's Findings

After hearing Dambrowski's testimony and reviewing the medical evidence, the ALJ denied his application for SSI benefits based on his finding that Dambrowski was not disabled within the meaning of the Act.  (Id. at 9-11, 13, 16).  In his decision, the ALJ first found that Dambrowski had engaged in no substantial gainful activity since his application.  (Id. at 13).  He next concluded that Dambrowski suffered from physical and mental impairments that were appropriately characterized as "severe," but that did not

---

[8]    A hematocrit test determines through the use of a centrifuge or blood cell counter the volume of packed red blood cells in a blood specimen.  Dorland's, supra note 2, at 741.  A low hematocrit level is a potential sign of anemia.  See http://nlm.nih.gov/medlineplus/ency/article/003646.htm (last visited July 23, 2008).

"me[e]t the clinical requirements of any impairment in [20 C.F.R. pt. 404, Subpt. P, App. 1 (the "Listings")]." (Id.). In the course of making this determination, the ALJ did not specify which of the Listings he had considered. The ALJ nevertheless did observe that "no medical personnel have mentioned findings equivalent to the clinical requirements of any impairment defined and described [in] the Listings." (Id.).

In determining Dambrowski's RFC, the ALJ noted that Dambrowski had admitted to Dr. Khattak that "he could lift and carry 20 pounds, walk ten blocks, travel for two to three hours, walk up two flights of stairs and do his housework despite the impact of his medical condition." (Id. at 14). The ALJ also observed that these "admissions against interest" were uncontradicted by the record. (Id.). He concluded that Dambrowski's subjective allegations "regarding the extent of his symptoms and their impact on his ability to work" were "somewhat credible," but found that there was "insufficient objective medical evidence to verify that he was 'disabled' during the relevant time period." (Id. at 14, 16). As the ALJ explained,

> as far as Mr. Dambrowski's ability to work on a full-time, sustained and competitive basis during the relevant time period has been concerned, he has been limited to and capable of performing jobs requiring no more than a sedentary level of exertion provided, as well, that he works at a job that does not require too much interaction with co-workers or the public.

(Id. at 14).

The ALJ noted with regard to Dambrowski's depression that Dambrowski was not in treatment when he was examined by Dr. Robotti, and that Dr. Robotti found him to have only "'mild' limitation[s]" in his social functioning.  (Id. at 13-14).

Finally, the ALJ considered whether the SSA met its burden of proving that there are jobs in the national economy that Dambrowski could perform.  (Id. at 15).  With respect to that issue, the ALJ cited Cestar's opinion that a hypothetical person of Dambrowski's age, education, and RFC could work as a ticket counter or surveillance monitor.  The ALJ made no mention of Cestar's further opinion that such a person would not be able to work in any capacity in the national economy if he needed to take frequent breaks and miss work.  (Id.).

Applying the SSA's Medical-Vocational Guidelines (20 C.F.R. pt. 404, Subpt. P, Regulations. No. 4, App. 2), the ALJ found that Dambrowski was a "younger individual" with an eighth-grade education, who could perform sedentary work not requiring "too much interaction with co-workers or the public."  (Id.).  He concluded that Dambrowski therefore was not disabled within the meaning of the Act and declined to award him benefits.  (Id. at 16).

II.    Discussion

    A.    Judgment on the Pleadings

        Dambrowski argues that the Court should award him judgment on the pleadings because the record establishes his disability.  (Pl.'s Reply at 1, 5, 7).  Under Rule

12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988); Caraballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  The Act, in turn, provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g); see Richardson v. Perales, 402 U.S. 389, 401 (1971); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  The term "substantial" does not require that the evidence be overwhelming, but it must be "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)) (internal quotation marks omitted).

 A reviewing court is not permitted to review the Commissioner's decision de novo.  Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998); Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).  Rather, where the Commissioner's determination is supported by substantial evidence, the decision must be upheld.  See Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990); Ortiz v. Barnhart, No. 00 Civ. 9171 (RWS), 2002 WL 449858, at *4 (S.D.N.Y. Mar. 22, 2002).  As discussed below, because there is a question as to whether substantial evidence supported the ALJ's

finding that Dambrowski's condition did not meet any of the Listings, he is not entitled to judgment under Rule 12(c).

B.    Remand

The Social Security Act authorizes a reviewing court to reverse the Commissioner's decision and remand a case for further administrative proceedings. 42 U.S.C. § 405(g). Sentence four of 42 U.S.C. § 405(g) provides:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing.

Id.

Remand to the Commissioner is appropriate "'when there are gaps in the administrative record or the ALJ has applied an improper legal standard.'" Rivera v. Barnhart, 379 F. Supp. 2d 599, 603-04 (S.D.N.Y. 2005) (quoting Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999)). Thus, if the reviewing district court finds that the ALJ's determination was not supported by substantial evidence, remand is proper. Id. at 604 (citing Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), and Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)). Furthermore, "a finding that the Commissioner has failed to specify the basis for [his] conclusions is an equally compelling cause for remand." Lugo v. Chater, No. 94 Civ. 4633 (SS), 1996 WL 116233, at *2 (S.D.N.Y. Mar. 15, 1996) (citing Rivera v. Sullivan, 771 F. Supp. 1339, 1354 (S.D.N.Y. 1991) ("It is self-evident

14

that a determination by the [Commissioner] must contain a sufficient explanation of his

reasoning to permit the reviewing court to judge the adequacy of his conclusions.")).

C.    Disability and Listed Impairments

A "disability" is defined in the Act as an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  In making a determination as to a claimant's disability, the Commissioner

is required to apply the familiar five-step sequential process set forth in 20 C.F.R.

§§ 404.1520 and 416.920.  The Second Circuit has described that process as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not,
> the [Commissioner] next considers whether the claimant has a
> "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the
> claimant has such an impairment, the [Commissioner] will
> consider him disabled without considering vocational factors
> such as age, education, and work experience . . . . Assuming
> the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past
> work.  Finally, if the claimant is unable to perform his past
> work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.

Rosa, 168 F.3d at 77 (quoting Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982));

accord Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002).

The claimant bears the burden of proof with respect to the first four steps of

this process. DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998). If the

Commissioner finds that a claimant is disabled or not disabled at an early step in the

process, he need not proceed with any further analysis. Williams v. Apfel, 204 F.3d 48, 49

(2d Cir. 2000).

Where a claimant has a severe impairment, but that impairment is not listed

in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ must determine whether it is

equivalent to one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii). Both

Dambrowski and the Commissioner agree that Dambrowski's condition could have met

the impairment listed in Section 5.06 of Appendix 1, which applied to "chronic ulcerative

or granulomatous colitis." (Pl.'s Mem. at 13-14; Def.'s Mem. at 8-9). In order to have

met this listing at the time the ALJ rendered his decision, a patient must have had chronic

ulcerative colitis with "[r]ecurrent bloody stools documented on repeated examinations

and anemia manifested by hematocrit of 30 percent or less on repeated examinations." 20

C.F.R. pt. 404, Subpt. P, App. 1 § 5.06(A) (effective May 5, 2006, to Feb. 19, 2007)

(emphasis added).[9]

---

[9]    The version of Section 5.06 in effect at the time the ALJ issued his decision also
listed five accompanying conditions (A-E) which, when paired with chronic ulcerative colitis,
qualified the condition as a disability. Only subsection A was applicable in Dambrowski's case.

Dambrowski's condition seemingly meets all of the criteria of the Listings then in effect. First, almost every medical record indicates that he suffers from chronic ulcerative colitis. (See R. 72, 76, 113, 121, 127, 140, 142, 146, 181, 213, 232, 234, 236, 295, 298, 332-36). Second, his records are filled with reports of recurrent bloody stools. (See, e.g., id. at 77, 79, 113, 140, 201). Finally, his records reflect that he has anemia and that his hematocrit level was at 30 percent or below on at least two occasions. (Id. at 98, 144). Specifically, on August 22, 2003, Dambrowski had a hematocrit of 29.4 percent. (Id. at 98). On October 8, 2003, his hematocrit level was 29.7 percent. (Id. at 144). The other recorded hematocrit levels were over 30 percent, ranging from 30.7 percent on October 9, 2003, to 42.2 percent on March 17, 2004. (Id. at 92, 98, 109, 114, 144, 197, 252-53, 300).

Despite this medical evidence, the ALJ found that Dambrowski's condition did not "me[e]t or equal the clinical requirements of any impairment contained in [the Listings]." (Id. at 15). He failed to explain this conclusion or discuss why two instances would not meet the requirement of a "hematocrit of 30 percent or less on repeated examinations." 20 C.F.R. pt. 404, Subpt. P, App. 1 § 5.06(A). Indeed, it is impossible to tell whether the ALJ even considered this evidence in reaching his determination.

The ALJ's decision consequently cannot be said to be based on substantial evidence. A remand therefore is warranted. See Pratts, 94 F.3d at 39 ("Remand is particularly appropriate where, as here, we are 'unable to fathom the ALJ's rationale in

relation to the evidence in the record' without 'further findings or clearer explanation for the decision.'") (quoting Berry, 675 F.2d at 469); see also Blizzard v. Barnhart, No. 03 Civ. 10301 (GWG), 2005 WL 946728, at *17 (S.D.N.Y. Apr. 25, 2005) (remand is necessary where "the sole issue in th[e] case [is] whether [plaintiff] met or equaled the impairment listed in 20 C.F.R. 404 Subpart P, Appendix 1"); Twyne ex rel. Johnson v. Barnhart, No. 01 Civ. 2264 (LMM), 2003 WL 22299198, at *10 (S.D.N.Y. Oct. 7, 2003) (court "unable to determine whether [the ALJ's] conclusions [were] supported by substantial evidence" where only one paragraph of a ten-page decision discussed the listed impairments).

On remand, the ALJ will have to consider the current Listings, which provide that an individual is disabled if he has ulcerative colitis accompanied by either obstructions in the small intestine or colon, or a combination of the following: anemia manifested by a hemoglobin under 10 g/dL on two occasions sixty days apart; a serum albumin[10] of 3 g/dL or less on two occasions sixty days apart; or a tender, painful abdomen documented at least twice in over sixty days. See 20 C.F.R. pt. 404, Subpt. P, App. 1 § 5.06(A), (B)(1), (2), (3) (2008)[11]; see also Brown v. Barnhart, 370 F. Supp. 2d 286, 291-92 (D.D.C. 2005) (remanding to give the Commissioner "the first chance to evaluate the

---

[10]    "Serum albumin" is the "major plasma protein" that transports proteins carrying organic compounds, drugs, and hormones.  Dorland's, supra note 2, at 43.

[11]    Section 5.06(B) lists three additional conditions (4-6) which, when paired with ulcerative colitis, qualify the condition as a disability.  Subsections (B)(4)-(6) are not applicable in Dambrowski's case.

evidence using the correct listing of impairments" in light of a revision to the Listings); 72

Fed. Reg. 59,398 (Oct. 19, 2007) (codified at 20 C.F.R. pt. 404) (the SSA will apply the

revised Listings to "claims in which we make a determination or decision after a remand to

us from a Federal court . . . [for] the entire period at issue in the claim"). Dambrowski's

medical records reveal that he has suffered from conditions that may satisfy the current

Listings. (See R. 86-87, 95-96 (polyps removed on Aug. 13, 2003), 122-25 (polyps

removed on Oct. 7, 2003), 102-08 (polyps removed on Nov. 5, 2003)).

      D.    ALJ's Duty to Develop the Record Fully

      In deciding whether the ALJ's decision was based on substantial evidence, a

reviewing court also must determine whether the ALJ complied with his affirmative duty

to develop fully the administrative record. Rivera, 379 F. Supp. 2d at 604 (citing Perez, 77

F.3d at 47). This duty is heightened where, as here, the claimant was not represented by

counsel at the administrative hearing. See Colondres v. Barnhart, No. 04 Civ. 1841 (SAS),

2005 WL 106893, at *6 (S.D.N.Y. Jan. 18, 2005); Smith v. Bowen, 687 F. Supp. 902, 906

(S.D.N.Y. 1988) ("The ALJ's duty to develop the comprehensive record requisite for an

equitable determination of disability is greatest when claimant is unrepresented.").

      The ALJ did not fully develop the record in this case. Dambrowski

submitted documents indicating that he was discharged from Beth Israel Hospital on both

February 4 and March 3, 2004. (R. 185-86, 301-02). The discharge forms, however, were

not accompanied by any medical records and the ALJ made no effort to obtain the records

attendant to these hospital stays.  Had he done so, additional medical evidence as to

Dambrowski's hematocrit levels might have come to light.  If those levels were 30 percent

or below, the ALJ might well have concluded that Dambrowski met the listing impairment

(Section 5.06), and awarded him benefits.  See 20 C.F.R. § 404.1520(a)(4) ("If we can

find that you are disabled or not disabled at a step, we make our determination or decision

and we do not go on to the next step."); id. § 404.1520(a)(4)(iii) (if the claimant has an

impairment at step three "that meets or equals one of our listings in appendix 1 of this

subpart and meets the duration requirement, we will find that [he is] disabled"); see also

Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995) ("If a claimant's condition meets or

equals the 'listed' impairments, he or she is conclusively presumed to be disabled and

entitled to benefits.").  Similarly, if those records reveal that Dambrowski had further

obstructions in his small intestine or colon, or that his blood levels meet the requirements

of the current Listings, the ALJ may well conclude on remand that Dambrowkski is

disabled.  By failing to obtain the missing hospital records, the ALJ denied Dambrowski a

full and fair hearing.  A remand therefore is necessary so that the ALJ can consider a

complete record.

     E.     Remand for Calculation of Benefits

     Dambrowski argues that the case should be remanded only to calculate

benefits.  (Pl.'s Reply at 1, 7).  A remand solely for the calculation of benefits is an

"extraordinary action and is proper only when further development of the record would

serve no purpose." Rivera, 379 F. Supp. 2d at 604 (citing Rosa, 168 F.3d at 83). In

making this assessment, the Court should apply the version of the Listings that was in

effect when the Commissioner made his final decision. See 72 Fed. Reg. 59,398. Here,

there is evidence in the record that tends to support a finding of nondisability under those

Listings. For example, had he addressed the issue, the ALJ might have determined that the

two occasions on which Dambrowski had hematocrit levels below 30 percent were

insufficient to establish that Dambrowski had demonstrated that he had such a reading on

"repeated examinations." Furthermore, the ALJ may well find that the record does not

support a disability under the new Listings, which eliminate hematocrit levels as an

indicator of severe impairment and require different medical findings with respect to

ulcerative colitis. See 20 C.F.R. § 5.06; 72 Fed. Reg. 59,398, 59,402 (revising the

criterion for anemia because "significant progress" in medical treatments has revealed that

"[a] hematocrit level by itself is generally not an appropriate indicator of . . . severity").[12]

---

[12]    Assuming that the ALJ finds on remand that Dambrowski has a severe
impairment that does not meet or equal one set forth in the Listings, the ALJ will have to
consider whether there is other work Dambrowski could perform. In that regard, the doctors
conducting Dambrowski's RFC examinations concluded that he was able to do certain types of
sedentary work. Moreover, during his examination by Dr. Khattak, Dambrowski admitted that
he could "walk ten blocks, lift and carry 20 [pounds]," "shop for one hour," "travel for two to
three hours," and climb two flights of stairs. (R. 148). The ALJ found that Dambrowski's
assertions to the contrary at his hearing were "somewhat credible," but accorded greater weight
to the clinical findings and Dambrowski's statements to Dr. Khattak. (Id. at 14). A more
complete explanation of the rationale for this aspect of his decision on remand would be prudent.
See Rivera v. Apfel, No. 94 Civ. 5222 (MBM), 1999 WL 138920, at *8 (S.D.N.Y. Mar. 15,
1999) (ALJ must state specific reasons for rejecting claimant's statements as not credible); Lugo
v. Apfel, 20 F. Supp. 2d 662, 663 (S.D.N.Y. 1998) (same).

Thus, because the record contains evidence that could support a finding of nondisability, the case cannot be remanded solely for the calculation of benefits.

III.    Conclusion

For the foregoing reasons, Dambrowski's motion for judgment on the pleadings, (Docket No. 8), should be denied.  Additionally, the Commissioner's cross-motion to remand the case for further administrative proceedings, (Docket No. 12), should be granted.

IV.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension

of time for filing objections must be directed to Judge Holwell. The failure to file timely

objections will result in a waiver of those objections for purposes of appeal. See 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:      New York, New York
            July 25, 2008

                                        _____
                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Josephine Gottesman, Esq.
Fax: (973) 286-3061

Leslie A. Ramirez-Fisher, Esq.
Assistant United States Attorney
Fax: (212) 637-2750