UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH DAMBROWSKI,

                         Plaintiff,

    -against-                            07 Civ. 3775 (RJH)

                                                **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,                               **AND ORDER**
Commissioner of Social Security,

                        Defendant.

---

       Plaintiff Joseph Dambrowski brings this action pursuant to Section 205(g) of the Social Security Act, as amended ("Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), to seek review of a final decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying his application for Supplemental Security Income ("SSI") benefits. Plaintiff has moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, and the Commissioner has cross-moved to remand the case for further administrative proceedings. In his report and recommendation (the "Report"), Magistrate Judge Frank Maas concluded that the Commissioner's motion should be granted and that the plaintiff's motion should be denied. Plaintiff filed timely objections to the Report on six grounds, contending that, contrary to Report: (1) there are no gaps in the administrative record requiring a remand for further fact-finding; (2) the Administrative Law Judge's ("ALJ") failure to specify a

1

basis for his conclusions is not a cause for remand; (3) remand is not warranted when some portions of the ALJ's decision are supported by substantial evidence while others are not; (4) the ALJ's failure to fully develop the record does not require remand; (5) there is no evidence in the record tending to support a finding of non-disability; and (6) there is additional evidence in the record warranting a judgment in plaintiff's favor.  For the reasons that follow, the Court adopts the Report's conclusions, and remands this case to the SSA for further administrative proceedings.

## BACKGROUND

The factual background and relevant procedural history are set forth in the Magistrate's Judge's Report and Recommendation.  The court adopts the findings of fact as set forth in the Report and assumes familiarity with the facts as stated therein.

## DISCUSSION

**I.     Standards of Review**

   **A.     Review of the Magistrate Judge's Report**

A district court may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motions.  *See* 28 U.S.C. § 636(b)(1).  Within ten days of service of the recommendation, any party may file written objections to the magistrate's report.  *Id.*  In evaluating the report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate".  *Id.*

The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see, e.g., Eisenberg v. New England Motor Freight*, *Inc.*, 564 F. Supp. 2d 224, 226-27

(S.D.N.Y. 2008). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (citations omitted). Where a party makes "merely perfunctory responses, argue[s] in a rehashing of the same arguments set forth in the original petition", the court reviews for clear error. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). Parties "may not attempt to relitigate the entire content of the hearing … [and] are not to be afforded a 'second bite at the apple'". *Carmardo v. General Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).

### B.     Review of the Administrative Law Judge's Decision

A federal district court reviewing the decision of an administrative law judge in a social security appeal looks to whether the correct legal standards were applied and whether the agency's factual determinations are supported by "substantial evidence". *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007) (citing *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004) (internal quotation marks omitted)); s*ee, e.g.*, *Jordan v. Comm'r of Soc. Sec.*, 194 F. App'x. 59, 61 (2d Cir. 2006) (citing *Urtz v. Callahan*, 965 F. Supp. 324, 326 (N.D.N.Y. 1997) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Substantial evidence is "more than a mere scintilla" of evidence. *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". *Jordan*, 194 F. App'x. at 61 ((quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). "Where the Commissioner's decision rests

3

on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Review of the ALJ's legal conclusions is *de novo*. *Pollard*, 377 F.3d at 188; *see also Rivera v. Sullivan*, 771 F. Supp. 1339, 1351 (S.D.N.Y. 1991) (observing that "with respect to the [ALJ's] legal conclusions, or more generally his application of legal principles, judicial review is *de novo*").

## II. The ALJ's Decision Is Not Supported by Substantial Evidence

The Social Security Administration uses a five-step procedure for evaluating disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience .c.c.c. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (interpreting procedure described at 20 C.F.R. § 404.1520). The claimant has the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* at 77-78 (citing cases).

### A. The Listing

At the first step, the ALJ determined that plaintiff was not engaged in substantial activity, and at the second step, that plaintiff has a "severe impairment". (R. at 13, 15.) The ALJ then determined at the third step that plaintiff did not satisfy the criteria for a listed impairment in Appendix 1 of the regulations. (*Id.*) The relevant Listing requires that the claimant have "[r]ecurrent bloody stools documented on repeated examinations and anemia manifested by hematocrit levels of 30 percent or less on repeated examinations." 20 C.F.R. pt. 404, Subpt. P, App. 1 § 5.06(A) (effective May 5, 2006, to Feb. 19, 2007).[1] Plaintiff has had two examinations where his hematocrit level was under 30%, (*id.* at 98, 144), and five tests where it was between 30% and 35%, (*id.* at 92, 109, 144).

The ALJ found that "none of [plaintiff's] medical impairments have met the clinical requirements of any impairment in the listings" without providing any further analysis or citing any medical evidence from the record. (R. at 13.) Judge Maas determined that the ALJ's conclusion on this point was conclusory and not supported by substantial evidence. (Report at 17.) Because neither party objects to this determination, (Pl. Obj. at 2; Def. Resp. at 4-5), and because the Court does not find clear error, the Court adopts Judge Maas's finding on this issue.

---

[1] As Judge Maas observed, this Listing has since been updated, and the Social Security Administration has replaced hematocrit levels with an entirely new test for determining the severity of a claimant's anemia. (REPORT at 18.) On remand, the ALJ will have to apply the new standard. Social security regulations, however, do not permit a reviewing Court to consider the effects of the new standard in evaluating final agency decision. 72 F.R. at 59,398 (stating that "with respect to claims in which we have made a final decision and that are pending judicial review in Federal court, we expect that the court would review the Commissioner's final decision in accordance with the rules in effect at the time the final decision of the Commissioner was issued").

5

> **B.** **Other Gainful Employment**
>
> **1.** **The ALJ's Findings**

The ALJ skipped the fourth step because the plaintiff had no "past relevant work", (R. at 15), and proceeded directly to the fifth-step determination of whether there was any other work the plaintiff could perform. In making the fifth-step determination, the Commissioner has the burden to show that "there is other gainful work in the national economy which the claimant could perform." *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *see also Perez*, 77 F.3d at 46 ("If the claimant satisfies her burden of proving the requirements in the first four steps, the burden then shifts to the [Commissioner] to prove in the fifth step that the claimant is capable of working.").

At this step, the ALJ determined that plaintiff was capable of performing sedentary work that did not require too much interaction with the public. (*Id.* at 16.) For this determination, the ALJ relied on two pieces of evidence: plaintiff's admission that he could "lift and carry 20 pounds, walk ten blocks, travel for two to three hours, walk up two flights of stairs and do his housework despite the impact of his medical condition", (*Id.* at 14), and Dr. Oksana Aron's finding that plaintiff had only "moderate limits on physical activity", (*id*). The ALJ next noted that the vocational expert had determined that a hypothetical individual with plaintiff's "age, education, past relevant work experience, and residual functional capacity" could work as a ticket counter or surveillance system monitor. (*Id.* at 15.) Taking these two determinations into account and applying the relevant Medical-Vocational Guidelines, the ALJ concluded that plaintiff was not disabled. (*Id.*)

### 2. The ALJ's Findings Are Not Supported by Substantial Evidence

Sedentary work generally requires "up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez*, 77 F.3d at 46; *see also Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) ("By its very nature 'sedentary' work requires a person to sit for long periods of time even though standing and walking are occasionally required."). The ALJ's conclusion that Dambrowski could perform sedentary work was flawed in several respects.

First, it is not reasonable to infer from plaintiff's statement that he can "walk ten blocks, travel for two to three hours, and do [his] housework" that he can sit attentively for six hours out of eight, while standing for the other two, with only minimal breaks. These are different activities requiring different capabilities.

Second, such an inference is again not reasonable from Dr. Aron's conclusion that plaintiff is "moderately impaired in activities requiring lifting, carrying and traveling secondary to his ulcerative colitis." (R. at 298.) This type of vague and conclusory medical determination has been rejected by the Second Circuit as insufficient to satisfy the ALJ's fifth-step burden. *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000). In *Curry*, the ALJ had relied on a doctor's opinion that "plaintiff's impairment is: lifting and carrying moderate; standing and walking, pushing and pulling and sitting mild." *Id.* The Second Circuit characterized this evidence as "so vague as to render it useless in evaluating whether Curry can perform sedentary work. In particular Dr. Mancehno's use of the terms 'moderate' and 'mild' does not permit the ALJ … to make the necessary inference that [plaintiff] can perform sedentary work." *Id.* The language of Dr. Aron's upon which the ALJ relied in the instant case is of exactly the same kind, and it was error

7

for the ALJ to place any weight upon it. Because neither of the two pieces of evidence upon which the ALJ relied, either separately or in combination, are substantial enough to support the ALJ's conclusion that plaintiff is capable of sedentary work, that conclusion was error.

Additionally, the ALJ erred by relying on the Medical-Vocational Guidelines without considering the effects of plaintiff's nonexertional impairments. While "in the ordinary case, the Commissioner meets his burden at the fifth step by resorting to the applicable medical vocational guidelines", *Rosa*, 168 F.3d at 78 (citations and quotation marks omitted), the Second Circuit has found that the grid determination is not always dispositive:

> Exclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations. In particular, sole reliance on the grid[s] may be precluded where the claimant's exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform. In these circumstances, the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.

*Id.* (internal citations and quotation marks omitted). A nonexertional impairment is a limitation "imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain." *Id.* n.2 (citing *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997) (citing 20 C.F.R. § 404.1569a(a), (c)). In the instant case, plaintiff had an obvious nonexertional impairment that he claimed prevented him from working: his need to use the bathroom with unusual frequency. (*See, e.g.*, R. at 351.)

Because the plaintiff claimed a significant nonexertional impairment, the ALJ was required to "introduce the testimony of a vocational expert that jobs exist in the economy

8

which claimant can obtain and perform." *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).  The ALJ did consult a vocational expert, who reported that there existed jobs a person with plaintiff's exertional capacity could perform.  However, the vocational expert also gave the following answers:

> Q: If a person has symptoms or a combination of symptoms including pain and discomfort or emotional distress and these are of a degree or severity as would cause a person to miss work on the average of three days a month, could such a person sustain the performance of any of the jobs that you have indicated
> A: No!
> Q: If a person, by reason of these symptoms, would have to take extra breaks totaling one hour per day on the average, could such a person sustain the jobs you indicated?
> A: No!  The claimant is unlikely to meet quality standards and productivity norms on a sustained basis.  These are essential for competitive employment.

(R. at 323-24.)  In the absence of any other evidence in the record on the existence of jobs that a person with plaintiff's capacities could perform, the vocational expert's opinion is entitled to great weight on this point.  In light of these answers from the vocational expert, in order to find that plaintiff was not disabled, the ALJ needed to find that plaintiff would not need to miss three days per month or take extra breaks totaling one hour per day on average.  "Rather than requiring [plaintiff] to demonstrate that he cannot sit for extended periods, the law requires the Commissioner to prove that [plaintiff] can sit for the requisite number of hours per day.  *Curry*, 209 F.3d at 123 n.1.  The ALJ ignored this part of the vocational expert's testimony and did not make the necessary finding.  *Cf. Brodie v. Apfel*, No. 00 Civ. 3544, 2001 U.S. Dist. LEXIS 2189, at *14 (S.D.N.Y 2008) (finding that plaintiff's ability to swim for one to hours was insufficient to show that he had the ability to work for eight hours).

The only evidence in the record directly on point is a Physical Residual Functional Capacity Assessment that concludes plaintiff can "stand and/or walk (with normal breaks) for a total of "about 6 hours in an 8 hour workday" and can "sit (with normal breaks) for a total of about 6 hours in an 8 hour workday." (R. at 152.) However, as the phrase "medical consultant" has been crossed out above the signature on the form, (R. at 156), it is unclear who filled out and signed the assessment and whether this person was a medical doctor. Further, neither the parties nor the ALJ cited this assessment at any point. The Court therefore declines to give this assessment any weight. Accordingly, the Court holds that ALJ's decision is not supported by substantial evidence.

### III.     Remand For Further Proceedings Is the Appropriate Remedy

#### A.     Standard for Remand

The parties agree that remand is appropriate when the ALJ's decision is not supported by substantial evidence, but disagree as to whether remand for calculation of benefits or remand to close gaps in the administrative record is appropriate. "Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." *Rosa*, 168 F.3d at 82-83 (quoting *Pratts*, 94 F.3d at 39 (internal citations and quotation marks omitted)); s*ee also Curry*, 209 F.3d at 124 ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, [the Court] generally … remand[s] the matter to the Commissioner for further consideration"). In other situations, where this Court has had no apparent basis to conclude that a more complete record might support the

Commissioner's decision, we have opted simply to remand for a calculation of benefits." *Rosa*, 168 F.3d at 83.  The main factor in determining which remedy is appropriate is whether the ALJ has "failed to develop the record sufficiently to make any appropriate determination in either direction".  *Id.*

### B.     The Listing

The Court adopts Judge Maas's recommendation that remand for further proceedings is appropriate to determine, under step three, whether plaintiff has a listed impairment.  "[F]urther findings would so plainly help to assure the proper disposition" of the claim.  *Id.*  The evidence in the record of hematocrit readings indicates that plaintiff's hematocrit reading was below 30% twice, on August 22, 2003 and October 8, 2003, when the readings were 29.4% and 29.7%, respectively.  (R. at 98, 144.)  The record indicates that plaintiff's hematocrit reading was above 30% on four occasions: August 12 , 2003, when the level was 31.3%; October 7, 2003, when the level was 31.4%; October 9, 2003, when the level was 30.7%; and October 29, 2003,  when the level was 31.3%.  (*Id.* at 92, 144.)  As Judge Maas found, however, medical records from plaintiff's hospital stays on February 4 and March 3, 2004 are missing from the record and could provide further evidence of plaintiff's hematocrit levels.  (Report at 19-20.)  If they do, the records would materially affect the analysis of whether plaintiff satisfies the Listing requirement of "30% or less on repeated examinations."  Further tests under 30% would suggest that the requirement has been met; further tests significantly above 30% might suggest that the two tests under 30% are outliers and should be given less weight.

Plaintiff urges the court to declare that the requirement has been satisfied. Plaintiff argues that, because the ALJ *did not* support his decision with substantial

evidence, the ALJ *could not* support his decision with substantial evidence, and therefore remand is appropriate for calculation of benefits only.  (Pl. Obj. 2-4.)  This goes too far.  While the ALJ's decision was conclusory and based on an incomplete record, it is still possible that on remand, and after having considered further evidence, the ALJ could reach the same conclusion that the Listing is not satisfied.

Plaintiff also contends that the missing records are from only a two-month span in a lengthy 6-year case record.  (Pl. Obj. 1.)  But that the record is otherwise well-documented is of no moment when considering whether there might be missing evidence on the particular point at issue.  Most of the evidence in the record says nothing about examinations of hematocrit levels; that there is plenty of other evidence in the record which does not bear on the crucial issue is simply irrelevant.

Finally, Plaintiff also argues that the missing records are a "non-issue … [because] [p]laintiff's hematocrit levels in multiple draws in 2003 were at Listings level, and the listing does not specify exactly how many times the hematocrit must be at 30% or less in order to meet the listing."  (Pl. Obj. 1-2.)  This argument turns on an overly rigid interpretation of the "repeated examinations" language in the Listings to mean "on at least two examinations."  There is nothing in the Listings that compels this interpretation, and the Court declines to adopt it.  In light of the incomplete record on this point, a remand for further development of the record is the appropriate remedy, and the Court therefore rejects Plaintiff's first objection that there is no gap in the administrative record regarding hematocrit levels which must be remedied.

### C. Nonexertional Impairments

Remand for further proceedings is also appropriate because the record is materially incomplete on the issue of whether plaintiff's nonexertional impairments are sufficiently severe that he would be unable to sustain any substantial gainful employment. In this case, the issue turns on whether there is evidence to show that plaintiff satisfies the vocational expert's criteria for a person not able to sustain competitive employment. While the plaintiff's history of ulcerative colitis is well-documented, the effectiveness of his medication is unclear. There is evidence that before being prescribed proper medication plaintiff was suffering from bloody diarrhea at approximately 10 times per day. (R. at 140, 199, 297.) However, at his more recent hospitalizations plaintiff reported a shorter duration of symptoms. In August 2003, he reported some improvement after beginning medication. (*Id*. at 90.) In January 2005, plaintiff reported symptoms lasting three days after having been off medication for three weeks. (*Id.* at 199.) In June 2005, he reported symptoms starting a week prior to his hospitalization, but it is unclear whether he had been taking his prescribed medication at this time. (*Id.* at 237, 239.) In September 2005, he reported symptoms lasting two weeks after having failed to take his medication for three weeks. (Report at 9; R. at 201.) Whether medication can effectively control plaintiff's symptoms such that he would be able to sustain substantial gainful employment is an apt issue for remand. The Court therefore rejects plaintiff's third, fourth, fifth, and sixth objections that the ALJ's step five analysis could not be supported by substantial evidence, that further development of the record is not necessary, that there is no evidence in record tending to support a

13

finding of non-disability, and that remand is not appropriate at step three because there is no substantial evidence at step five.  (Pl. Obj. 4, 5, 8.)

While the Second Circuit has occasionally remanded solely for calculation of benefits when the Commissioner has failed to meet his Step-Five burden, in those cases there was nothing to indicate that the record was materially incomplete or that further development of evidence would be helpful on the main issues.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (remanding for calculation of benefits when there was no obviously missing relevant evidence and "no purpose would be served by our remanding the case for rehearing unless the [Commissioner] could offer additional evidence") (quoting *Carroll v. Sec'y of Health and Human Serv's¸* 705 F.2d 638, 644 (2d Cir. 1983); *Curry*, 209 F.3d at 124 (remanding for calculation of benefits when "the Commissioner failed to introduce evidence sufficient to sustain his burden on the fifth step" and there was no suggestion that further evidence would be helpful).

In contrast, "when the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate."  *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004).  Remand for calculation of benefits is only appropriate when there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision."  *Rosa*, 168 F.3d at 83.  Remand for further development of the record has been found particularly appropriate when, as here, "the ALJ failed to develop the record as to whether [plaintiff]'s nonexertional limitations preclude him from performing other work in the national economy."  *Butts*, 388 F.3d at 386; s*ee also Veino v. Barnhart*, 312 F.3d 578, 589 (2d Cir. 2002)(remanding for further proceedings in part because the ALJ made no "specific finding" that plaintiff's

nonexertional impairments prevented him from performing the work the vocational expert testified was available); *Umansky v. Apfel*, 7 F. App'x. 124, 127 (2d Cir. 2001)(remanding for further development of the record when the doctor's report was too "conclusory" to be properly relied upon); *Villanueva v. Barnhart*, No. 03 Civ. 9021, 2004 U.S. Dist. LEXIS 26243, at *41-42 (S.D.N.Y. 2004) (remanding for further development of the record when "the extent of the plaintiff's limitations was not clear, and the ALJ failed to develop the record sufficiently to make an appropriate determination in either direction").

On remand, the ALJ should (1) attempt to acquire the missing hospital records for plaintiff's hospital stays on February 4 and March 3, 2004; (2) obtain further medical evidence on the issue of whether plaintiff's nonexertional limitations prevent him from performing sedentary work while taking his prescribed medication.[2] To satisfy (2), the ALJ may need to order a consultative examination of the plaintiff and instruct the consulting physician to complete a Residual Functional Capacity Assessment, which the ALJ has authority to order under statute. *See* 20 C.F.R. §§ 404.1512(f), 404.1517, 404.1519(a).

### D. Time Limit

District courts in this circuit have been instructed to consider imposing a time limit on subsequent proceedings when ordering a remand for further development of the record. *Butts*, 388 F.3d at 387 (imposing a time-limit of 60 days on subsequent proceedings and ordering calculation of benefits if the deadline is not met), *modified*, 416 F.3d 101, 106 (2d Cir. 2005) (modifying the deadline from 60 days to 120 days, or 90

---

[2] Because remand is not being ordered on the grounds that the Commissioner's failure to specify a basis for his conclusions is a cause for remand, the Court does not address Plaintiff's second objection that such a failure is not sufficient cause for remand.

15

days after plaintiff is prepared to go forward if plaintiff is not prepared after 30 days). As it has been more than five years since plaintiff filed his initial application for benefits, (R. at 12), a time limit is appropriate in this case to prevent undue delay. If plaintiff is able to go forward within 30 days, the proceedings before the ALJ must be completed within 120 days; if the plaintiff is not prepared to go forward within 30 days, the proceedings before the ALJ must be completed within 90 days of the date when plaintiff is prepared to proceed. If these deadlines are not observed, a calculation of benefits must be made. *Id.*

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings is DENIED and defendant's motion to remand for further proceedings is GRANTED. The Clerk of the Court is requested to close this case.

SO ORDERED.

Dated: New York, New York
December 17 2008

Richard J. Holwell
United States District Judge